IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
(GALVESTON DIVISION)

| | | |
|---|---|---|
| LAWRENCE HEDGECOCK and <br> EVERETT NORMAN MOORE, <br> Individually, <br>                 Plaintiffs, <br><br> v. <br><br> UNION PACIFIC RAILROAD, <br> INDIVIDUALLY, AND AS SUCCESSOR-<br>IN-INTEREST TO SOUTHERN PACIFIC <br> TRANSPORTATION COMPANY, <br>                 Defendant. | § § § § § § § § § § § § § § | <br><br><br><br><br> CASE #: _____ <br><br><br><br><br><br> JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiffs, LAWRENCE HEDGECOCK and EVERETT NORMAN MOORE, file this Complaint complaining of and against Defendant UNION PACIFIC RAILROAD, Individually, and as Successor-in-Interest to SOUTHERN PACIFIC TRANSPORTATION COMPANY [herein "Union Pacific[1]"], and for cause of action would show the Court the following:

### Nature of the Case

1.    This is an FELA personal injury case arising out of Plaintiffs' occupational exposure to asbestos while working for the Union Pacific Railroad in various places, including in this District.  Each of the Plaintiffs have contracted cancer, in whole or in part, because of exposure to asbestos and other toxic substances on the job.  Under the law, Union Pacific is jointly and severally liable for all damages.

### Jurisdiction and Venue

2.    This is an action by two railroad workers against the Railroad that exposed them to asbestos in the workplace.  Each of the Plaintiff railroad workers was exposed while working

---

[1] "Union Pacific" includes all railroads that Union Pacific became a successor-in-interest of.

for Union Pacific in this District.  Therefore, jurisdiction is vested in this Court by 45 U.S.C. § 51, commonly known as the Federal Employers Liability Act (FELA) and 28 U.S.C. § 1331. Venue is appropriate in this Court under 45 U.S.C. § 56, and 28 U.S.C. § 1391.

## Parties

3. Plaintiff LAWRENCE HEDGECOCK worked for Union Pacific Railroad and was exposed to asbestos, silica, and other toxic substances, including but not limited to, diesel exhaust, environmental tobacco smoke, and the components of said other toxic substances including, but not limited to polycyclic aromatic hydrocarbons, benzopyrenes, benzanthracenes, N-nitrosamines, aromatic amines, aldehydes, acrylonitrile, cadmium, chromium, polonium, other organic chemicals in the Southern District of Texas. These exposures caused him, in whole or in part develop lung cancer.

4. Plaintiff EVERETT NORMAN MOORE worked for Union Pacific Railroad and was exposed to asbestos, silica, and other toxic substances, including but not limited to, diesel exhaust, environmental tobacco smoke, and the components of said other toxic substances including, but not limited to polycyclic aromatic hydrocarbons, benzopyrenes, benzanthracenes, N-nitrosamines, aromatic amines, aldehydes, acrylonitrile, cadmium, chromium, polonium, other organic chemicals in the Southern District of Texas.  These exposures caused him, in whole or in part develop pharynx cancer.

5. Defendant Union Pacific Railroad, individually, and as successor-in-interest to the Southern Pacific Transportation Company [hereinafter "Union Pacific"], is the common or assumed name of the railroad corporate entity known as Union Pacific Corporation.  It operates approximately 32,100 miles of railroads in 23 states across the western two-thirds of the United States.  As such, it is a "common carrier in interstate commerce" in various portions of the United States, including in this Southern District of Texas.

**Facts**

6. Although Rule 8 still reads "short and plain statement," the recent twin "*Twiqbal*" decisions of the Supreme Court compel the filing of a more factually, robust pleading, to demonstrate the "plausibility" of the cause of action being asserted. Hopefully, without burdening the Court, this Complaint, and perhaps more importantly, the specific Answer thereto required by Rule 8(b), will help to apprise the Court of what is in dispute, both legally and factually, and what is not. With that in mind, Plaintiffs would show the Court the following.

**The Legal Framework:  Promoting Commerce While Still Protecting the Vulnerable**

7. The safe and efficient operation of interstate railroads is essential to the economic well-being of the American economy. But, somewhat paradoxically, building and operating a railroad is dangerous business. The men who performed these tasks in the Nineteenth Century were frequently injured or killed, normally in a traumatic manner, and various common law doctrines, like contributory negligence, assumption of risk, and the disappearance of any meaningful redress if the worker died, resulted in extreme injustice. This was, quite obviously, not only unfair and unjust, but also a disincentive to pursue such lines of work.

8. Shortly after the inception of the Twentieth Century, Congress recognized the dilemma presented by this dichotomy. It responded with a statutory solution, misnamed the Federal[2] Employees Liability Act, 45 U.S.C. § 51, *et. seq.* [FELA]. 35 Stat. 65-66 (April 22, 1908). This statute addressed the unfair anomalies, *inter alia*, by (a) creating a statutory "damages" cause of action for both personal injuries and wrongful death, § 51, (b) eliminating the assumption of the risk defense, § 54, (c) modifying the harsh common law contributory negligence defense by adopting a form of pure comparative negligence that simply reduced the

---

[2] This is an anomaly in the statute. Railroad workers are obviously not "federal" employees. They work for the railroads, which are private, "for profit" companies.

worker's recovery by his own percentage of negligence, § 53, (d) providing for joint and several liability of the railroad, with no right of offset, contribution or credit except to the extent of "contributions or payments it made to any insurance, relief benefit, or indemnity on behalf of Plaintiff", § 55; and (e) reducing the burden of proof regarding negligence and rejecting traditional common law definitions of "proximate cause" in favor of a legal cause burden to show only "that a defendant railroad caused or contributed to a railroad worker's injury" **no matter how small**—in bringing about the injury." *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 705 (2011) (Emphasis added).

9. Two years after the original enactment, Congress acted again to provide even further protection to railroad workers. The original FELA statute included language in § 51 that paralleled the British Lord Campbell's Act and provided for a recovery of "damages" when a railroad worker was killed. But there was confusion as to whether the worker's own claim for "damages" prior to his death would "survive" to his estate. Congress plugged the hole with a "Survival Statute." 45 U.S.C. § 59, 36 Stat. 291 (April 5, 1910).

10. Under FELA, the Railroads have a non-delegable duty to provide their employees with a safe working environment and the railroad workers who work for them have a statutory cause of action for "damages" whenever that duty is breached.

11. Ten years later Congress extended similar protections to the merchant marine and other "seamen" via the "Jones Act." 46 U.S.C. § 688, now codified at 46 U.S.C. § 30104. It has been read and construed in tandem with FELA.

12. As the Supreme Court has recognized, FELA is a remedial statute that must be construed in furtherance of its obvious purposes, *i.e.*, to provide railroad workers with a fair and reasonable means of obtaining "damages," as determined by a Jury, when they are injured or killed.

**Dangers Abound:  The Scourge of Asbestos**

13. Although the chemical formulation of six naturally occurring silicate minerals commonly known now as "asbestos" was known for many years prior to the enactment of FELA, large scale mining and commercial production and use of this material really began near the end of the Nineteenth Century.  At first, its various positive physical properties, including both heat insulation and fire retardance, made it seem like a boon to American business.  It quickly became used widely throughout the United States.  Two of the industries that used it the most were the Railroads and the Merchant Marine/Shipbuilding.

14. Within the first quarter of the Twentieth Century, however, it became fairly well known that this "boon" was really a "bane."  Asbestos exposure in the workplace would soon become the cause of horrible diseases that condemned railroad workers and Seamen to a long life of pain, suffering, and, in many cases, early, wrongful death.

15. Asbestos exposure in the work environment is extremely dangerous. Studies connecting asbestos exposure in the workplace to asbestosis, lung cancer, and mesothelioma were published long before any of the Plaintiff railroad workers in this case were exposed on the trains and work environs of the Union Pacific.  Indeed, in 1924, the British Medical Journal published the first report linking asbestos to asbestosis, a precursor of cancer.[3]  Several reports from the Proceedings of the Annual Meetings of the American Railway Association in the 1930's document that the industry as a whole was a notice of the dangers of exposure to "noxious dusts."  Including asbestos.  In 1955, the British Journal of Industrial Medicine published a study linking asbestos with lung cancer.[4]  Three years later, in 1958, the American

---

[3]  W E Cooke, 'Fibrosis of the lungs due to the inhalation of asbestos dust,' Br med. J., 1924, ul: 147; idem, 'Pulmonary asbestosis', Br med. J., 1927, ii: 1024-5.

[4]  R Doll, 'Mortality from lung cancer in asbestos workers', Br. J. ind. Med., 1955, 12: 81 6.

Railway Association minutes document that "there is a very good proof that asbestos is a cause of carcinoma."[5]  Then, in 1960, the seminal study by Wagner et al. linking asbestos to mesothelioma was published in the British Journal of Industrial Medicine.[6]  This study found that in 33 cases of mesothelioma, all but one had a proven history of exposure to asbestos.

16.    Another peer-reviewed publication shows that, by 1933, the Railroad Industry in particular was on clear notice of the dangers to its workers caused by asbestos exposure, and, damningly, that it turned a purposeful blind eye to those dangers and continued to expose the unknowing and vulnerable workers without warning, testing, or personal protective equipment. Mancuso, *supra*.

17.    During the next decade, extensive scientific literature continued to be published demonstrating that asbestos cause various malignant diseases, including mesothelioma.  Indeed, in 1972, the Occupational Safety and Health Administration issued its first standards limiting workplace exposure to asbestos to protect workers from asbestosis and mesothelioma.  Any railroad that exposed a worker after this ban was clearly negligent.  The Union Pacific did so.

18.    Asbestos is a carcinogen.  Therefore, mere exposure to it in the work environment gives rise to a legitimate fear of developing cancer, that the Supreme Court has found to be compensable in and of itself.  Asbestos exposure also causes "asbestosis" which is a non-malignant or pre-malignant inflammation and scarring of the lungs due to asbestos exposure.  It, too, is compensable.

---

[5]  Mancuso, Mesotheliomas in Railroad Workers, Vol 643, Annals of New York Academy of Sciences at p. 343 (1991).

[6]  J C Wagner, C A Sleggs, and P Marchand, 'Diffuse pleural mesotheliomas and asbestos exposure in the north-western Cape Province', Br J. ind. Med., 1960, 17: 260-71.  *See also*, Mancuso article cited in FN4, *supra*.

19. But by far, the most serious consequence of asbestos exposure while working for the Railroad is the actual development of cancer. Asbestos exposure in the work environment causes many cancers, including lung cancer, larynx, colon, ovaries and mesothelioma. Mesothelioma is, perhaps, the most devastating because it is (a) almost exclusively caused by asbestos exposure, and (b) incurably fatal.

20. Two unique aspects of asbestos-induced malignancies make them particularly pernicious. The first is that there is a long latency period.[7] The second is that there is an extreme additive effect of combining exposure to asbestos with exposure to other known carcinogens. This is a particularly acute problem for those railroad workers who got hooked on cigarettes and smoked them at the same time that they were being exposed to asbestos on their jobs. For example, on the job asbestos exposure was associated with a lung cancer death rate five times higher than average. BUT when asbestos exposure was combined with smoking, the death rate was **28 times higher than average**.[8]

21. The Court can readily see how exposure to multiple different carcinogens might create a confusing imbroglio for the Court and its Jury. Fortunately, however, the case law construing FELA and the Jones Act limits the potential for injustice caused by this confusion. The United States Supreme Court has made it crystal clear that both seamen and railroad workers have a single shot, focused legal remedy against any employer who negligently exposed them to asbestos, that such employers are jointly and severally liable for the full damages sustained, and

---

[7] For example, the Mancuso article cited in FN4, *supra*, shows that the latency period from hire to death from mesothelioma ranged from 33 to 64 years. *Id.* at Table 5.

[8] SB Markowitz et al, 'Asbestos, asbestosis, smoking and lung cancer New findings from the North American insulator cohort', Am J Respir Crit Care Med. 2013 Jul 1;188(1):90-6.

that the burden is on such employers to pursue any claims for contribution and/or indemnity via a separate action that will not delay justice for the seaman or railroad worker.[9]

### Union Pacific's Admissions

22.     Union Pacific's Asbestos Protection Policy dated January 1, 1985, at VII-2, states "Asbestos is a term used to describe a number of fibrous silicate minerals mined from deposits in the earth's surface.  In its raw form, asbestos appears to be a powdery clay-like material.  Under a microscope, however, asbestos resembles sharp needle-like rods stacked one on top of the other."

23.     Union Pacific's video, Asbestos Awareness Training – Health Risks, I.D. S-321-95, states "The adverse health effects associated with asbestos exposure have been studied for many years.  Results of these studies and epidemiological investigations have demonstrated that inhaling asbestos fibers may lead to an increased risk of developing one or more diseases.  Exactly why some people develop these diseases and others do not, remains a mystery."

24.     Union Pacific's video, "Asbestos Awareness Training – Health Risks," I.D. S-321-95, states "In the 1930s asbestos was generally recognized in England as a disease producing agent.  About this time information began to grow in the United States that asbestos was a dangerous agent."

25.     By 1935, the Association of American Railroads, of which Union Pacific and Southern Pacific Transportation Company were members, observed that "Pneumoconiosis is a condition that may be caused by any kind of dust entering the lungs; but we as railroad surgeons are undoubtedly more interested in silicosis and asbestosis than other types."  At that time, the Association of American Railroads recommended that, in order to prevent injuries or illness associated with exposure to these dusts, the railroads should: (i) educate all concerned; (ii) get rid

---

[9] *Norfolk & W. Ry. Co. v. Ayers*, 538 U.S. 135, 141 (2003).

of dust; (iii) sprinkle the working area with water; (iv) have employees wear inhalers; and (v) have frequent analysis made of the dust content of the air at different times during the working hours.

26. Despite knowledge regarding the health hazards associated with occupational exposure to asbestos and/or asbestos-containing dusts, Union Pacific continued to use asbestos and/or asbestos-containing products for decades thereafter and during Plaintiff's employment with Union Pacific.

27. Union Pacific's Asbestos Protection Policy dated January 1, 1985, states "In addition to insulation, asbestos has been used in cement products, plaster, fireproof tiles, vinyl floor tiles, acoustical and thermal insulation and sprayed materials.  Numerous locations in rolling stock contain asbestos.  These include tape used to wrap steam and hot water pipes on steam locomotives, air compressor pipes on diesel locomotives, tape used to wrap business car piping, sealing and glazing compounds, freight car roof cements, pipe joint insulation, barriers used as insulating blocks on dynamic brake grids, lining in the bottom of fire boxes on vapor steam boilers used on passenger locomotives, gaskets and covers on steam generators, gaskets and heat shields in and around Caban oil heaters in cabooses, composition brake shoes on locomotives and freight cars prior to 1981, arc-chutes and wire covering on locomotive, flexible train line insulation, and gaskets generally."

28. Union Pacific's Asbestos Protection Policy, dated January 1, 1985, at p. 4, states "Direct contact or damage to asbestos materials can occur in a number of ways, including regular work activities such as hanging pictures or attaching displays to friable material or impacts as part of the work process; maintenance activities involving intentional or accidental contact with the friable material; vandalism; water damage resulting in breaking away layers of material from underlying surfaces; and vibration from sources inside or outside a building."

29. Union Pacific's Asbestos Protection Policy dated January 1, 1985, at p. 4, states "Once fibers have been released, they can remain suspended in the air for many hours, and after settling can be re-suspended by air disturbances."

30. Union Pacific's Asbestos Protection Policy dated January 1, 1985, states at VII-2, "Asbestosis is the term used to describe the most common adverse health effect associated with breathing asbestos fibers. It is a debilitating disease that in some ways resembles emphysema. When asbestos fibers enter the lungs, they are imbedded into the tissue, forming nodules of scar tissue. As these nodules form, they reduce the elasticity of the lung and thereby its ability to take up oxygen which, in turn, leads to increasing breathlessness."

31. Union Pacific's video, "Asbestos Awareness Training – Health Risks," I.D. S-321-95, states "Latency period is the length of time between the exposure to asbestos and the onset of a disease."

32. Union Pacific's video, "Asbestos Awareness Training – Health Risks," I.D. S-321-95, states "The typical latency period for asbestosis is 15 to 30 years."

33. Union Pacific's Asbestos Protection Policy dated January 1, 1985, at VII-3, states "In addition to asbestosis, there is an increased tendency for certain lung and digestive system cancers among asbestos workers."

**Plaintiffs' Exposure and Resulting Illnesses**

34. Plaintiff LAWRENCE HEDGECOCK was born in Houston, Texas, is the husband of Beverly Hedgecock, and the father of two boys. He was trained as a plumber and became a sheet metal worker and pipe fitter for Union Pacific in 1973. Through various mergers and acquisitions, Mr. Hedgecock worked for Union Pacific until his retirement in 2007. He worked with pipe insulation, brake shoes, and gaskets for Union Pacific. In performing these duties he was exposed to asbestos, silica, and other toxic substances, including but not limited to,

diesel exhaust, environmental tobacco smoke, and the components of said other toxic substances including, but not limited to polycyclic aromatic hydrocarbons, benzopyrenes, benzanthracenes, N-nitrosamines, aromatic amines, aldehydes, acrylonitrile, cadmium, chromium, polonium, other organic chemicals. These exposures occurred in the Southern District of Texas, specifically Houston. Mr. Hedgecock was subsequently diagnosed with lung cancer and asbestosis. In 2015, he discovered that both were caused by his exposure to these toxic substances while working for Union Pacific.

35. Plaintiff EVERETT NORMAN MOORE was born in Teague, Texas, is married to Linda Moore, and is the father of two boys. Mr. Moore worked in various jobs as a carman apprentice, switchman, yardmaster, trainmaster, conductor and hostler for Union Pacific from 1964 until 2005. In performing these jobs he was exposed to asbestos, silica, and other toxic substances, including but not limited to, diesel exhaust, environmental tobacco smoke, and the components of said other toxic substances including, but not limited to polycyclic aromatic hydrocarbons, benzopyrenes, benzanthracenes, N-nitrosamines, aromatic amines, aldehydes, acrylonitrile, cadmium, chromium, polonium, other organic chemicals. These exposures occurred in the Southern District of Texas, specifically Houston. Mr. Moore was subsequently diagnosed with both asbestosis and pharynx cancer in 2016 that was caused by his exposure to these toxic substances while working for Union Pacific.

### Judicial Economies – Burdens on the Court

36. As workers' knowledge about the dangers of their prior asbestos exposure have become more commonplace, and as the latency periods for development of malignancies have run their course, there has been a natural and foreseeable proliferation of litigation involving these issues. The sheer volume has taxed the capacity of the courts and, quite frankly, the patience of many judges.

37. Courts have responded with creative, common sense solutions designed to follow the mandate of Rule 1 of the Federal Rules of Civil Procedure (and parallel provisions in various states' rules), *i.e.*, that the rules "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding."

38. Some courts have established separate "asbestos dockets" to handle the volume of non-malignant cases. Others have approved joint filings of similar cases against the same defendant, such as the case at bar. This case involves two separate railroad workers whom worked for the Union Pacific and have legitimate complaints of asbestos-induced cancers. To be sure, there are differences in the cases, and, depending on the admissions in the pleadings and the development of defenses, expert testimony, etc., the Court might choose, at some point in the future, to sever one or more of them from the rest. For the present time, however, judicial economy will be well-served by the consolidated filing and discovery of the cases.

## Causes of Action

39. FELA NEGLIGENCE. Section 51 of the FELA provides a federal statutory cause of action in negligence to permit an injured Railroad Worker, or his widow if applicable, to recover "damages" via the following statutory language:

> Every common carrier by railroad . . . shall be liable in damages to any person suffering injury . . . while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C.A. § 51 (Emphasis added).

40. During Plaintiffs' employment, Union Pacific, by and through its authorized agents, servants and employees, breached its non-delegable duty by committing one or more of the following negligent acts or omissions in violation of the Federal Employers Liability Act:

    a. Negligently failed to provide Plaintiffs with a reasonably safe place to work; and/or

    b. Negligently failed to provide Plaintiffs with safe or adequate equipment to protect him against exposure to asbestos, silica, and other toxic substances, including but not limited to, diesel exhaust, environmental tobacco smoke, and the components of said other toxic substances including, but not limited to polycyclic aromatic hydrocarbons, benzopyrenes, benzanthracenes, N-nitrosamines, aromatic amines, aldehydes, acrylonitrile, cadmium, chromium, polonium, other organic chemicals, and particulate matter; and/or

    c. Negligently exposed Plaintiffs to asbestos, silica, and other toxic substances, including but not limited to, diesel exhaust, environmental tobacco smoke, and the components of said other toxic substances including, but not limited to polycyclic aromatic hydrocarbons, benzopyrenes, benzanthracenes, N-nitrosamines, aromatic amines, aldehydes, acrylonitrile, cadmium, chromium, polonium, other organic chemicals, and particulate matter; and/or

    d. Negligently failed to warn Plaintiffs of the hazards of exposure to asbestos, silica, and other toxic substances, including but not limited to, diesel exhaust, environmental tobacco smoke, and the components of said other toxic substances including, but not limited to polycyclic aromatic hydrocarbons, benzopyrenes, benzanthracenes, N-nitrosamines, aromatic amines, aldehydes, acrylonitrile, cadmium, chromium, polonium, other organic chemicals, and particulate matter; and/or

    e. Negligently permitted unsafe work practices to become routine work practices; and/or

    f. Negligently failed to implement steps it knew would be effective to protect against, reduce, and/or eliminate exposure to asbestos, silica, and other toxic substances, including but not limited to, diesel exhaust, environmental

    tobacco smoke, and the components of said other toxic substances including, but not limited to polycyclic aromatic hydrocarbons, benzopyrenes, benzanthracenes, N-nitrosamines, aromatic amines, aldehydes, acrylonitrile, cadmium, chromium, polonium, other organic chemicals, and particulate matter.

41. During Plaintiffs' employment with Union Pacific, Union Pacific, by and through its agents, servants, and employees violated the Locomotive Inspection Act in one or more of the following respects:

  a. Failed to provide locomotives whose appurtenances were in safe condition; and

  b. Operated locomotives on its line which were unsafe because they emitted diesel exhaust, and the component chemicals in diesel exhaust.

42. One or more of the foregoing violations of the Federal Employers Liability Act caused, in whole or in part, Plaintiffs to develop cancer. Accordingly, all Plaintiffs are pursuing their causes of action for "damages" under FELA, including great pain and disability, loss of enjoyment of life, genuine and serious mental anguish, and extreme nervousness as a result of their reasonable concern over their injuries and Plaintiffs incurred and will continue to incur great expense in endeavoring to be cured of his injuries.

### Jury Demand

43. Plaintiffs hereby invoke their right to trial by Jury.

WHEREFORE, Plaintiffs LAWRENCE HEDGECOCK and EVERETT NORMAN MOORE pray for damages and judgment against Defendant Union Pacific Railroad in an amount to be determined by the presentation of evidence at the time of trial, together with taxable costs, pre-judgment interest and reasonable costs.

Respectfully submitted,

VICKERY & SHEPHERD, LLP

*/s/ Arnold Anderson Vickery*
Arnold Anderson Vickery
Texas Bar No. 20571800
Fred H. Shepherd
Texas Bar No. 24033056
Brian B. Winegar
Texas Bar No. 24081218
Earl Landers Vickery
Texas Bar No. 20571900
10000 Memorial Dr., Suite 750
Houston, TX 77024-3485
Telephone: 713-526-1100
Facsimile: 713-523-5939
Email: andy@justiceseekers.com
Email: fred@justiceseekers.com
Email: brian@justiceseekers.com
Email: lanny@justiceseekers.com